UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ROBERT WIGGINS,                                    **MEMORANDUM OPINION**
                                                   **AND ORDER**
                        Plaintiff,
                                                   18-CV-07559 (PMH)
v.

THOMAS GRIFFIN, et al.,

                        Defendants.

-------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

        Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced this action on August 16,

2018 and alleges that his constitutional rights were violated while he was incarcerated at the Green

Haven Correctional Facility ("Green Haven"). (Doc. 2, "Compl."). Plaintiff asserts claims under

42 U.S.C. § 1983 for violations of his First Amendment free exercise rights and Fourteenth

Amendment right to equal protection and presses claims against four Defendants: Thomas Griffin

("Griffin"), Superintendent of Green Haven; M. Kopp ("Kopp"), Deputy Superintendent of

Programs at Green Haven; D. Howard ("Howard"), Assistant Deputy Superintendent of Programs

at Green Haven; and Dr. G. Jebamani ("Jebamani"), Protestant Chaplain of Green Haven

(collectively "Defendants"). (*See generally id.*).

        Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56

on August 28, 2020. (Doc. 45; Doc. 53, "Defs. Br."). On September 16, 2020, Plaintiff filed

opposition to Defendants' motion for summary judgment (Doc. 57, "Pl. Br."), and the motion was

briefed fully with the filing of Defendants' reply brief on October 15, 2020 (Doc. 59).

        For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The facts, as recited below, are taken from Plaintiff's Complaint, Defendants' Local Rule 56.1 Statement (Doc. 52, "56.1 Stmt."),[1] and the admissible evidence submitted by the parties.

I.    Inability to Attend Protestant Services

At the time of the events giving rise to this dispute, Plaintiff was incarcerated at Green Haven. (Compl. ¶ 9). On April 3, 2017, Plaintiff was transferred from the H-Block to the A-Block. (*Id.* ¶ 14; 56.1 Stmt. ¶ 7). On April 8, 2017, Plaintiff was not called for Protestant religious services and was told by a correctional officer that his name did not appear on the call-out list. (Compl. ¶ 9; 56.1 Stmt. ¶ 9). Apparently, when Plaintiff's housing location was changed, the call-out list was not updated through the manual procedure utilized at Green Haven. (56.1 Stmt. ¶ 8). On multiple occasions thereafter, Plaintiff asked a fellow inmate, Hill, to deliver requests to Lewis, the inmate services clerk, that Plaintiff be added back to the Protestant call-out list. (56.1 Stmt. ¶ 12 (citing Wiggins Dep. at 88:17-90:23)).[2] Additionally, Plaintiff wrote a letter to Jebamani, the Protestant Chaplain at Green Haven, on May 2, 2017 and wrote a letter to Griffin, the Superintendent at Green

---

[1] Plaintiff did not submit a Rule 56.1 statement or respond to Defendants' Rule 56.1 Statement. Plaintiff's opposition brief, entitled "Reply Motion," is one-page long and includes a number of exhibits annexed thereto. While "*pro se* litigants are [] not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-7544, 2000 WL 328879, at *3 (S.D.N.Y. Mar. 28, 2000) ("Plaintiff did not submit a Statement Pursuant to Civil Rule 56.1. Instead, he submitted 'Plaintiff's Opposition for Defendant's Memorandum of Law in Support of Motion for Summary Judgment,' stating his disagreement with the defendant's version of the facts. In light of plaintiff's *pro se* status, the Court will accept the memorandum in lieu of a Rule 56.1 Statement."). While Plaintiff's opposition brief is in no way responsive to Defendant's Rule 56.1, the Court, in its discretion, will consider the opposition brief and the exhibits attached thereto, as well as the exhibits attached to Plaintiff's Complaint as opposition to Defendant's Rule 56.1 statement.

[2] Plaintiff's January 17, 2020 Deposition was attached to the Declaration of Michael J. Keane as six separate exhibits. (Docs. 27-1–27-6). For ease of reference, the Court refers to these six separate exhibits as a single document, "Wiggins Dep."

Haven, on May 7, 2017 requesting that he be restored to the Protestant call-out list. (Compl. at 18, 20).[3]

Jebamani, who is responsible for submitting inmate requests to be added to the Protestant call-out list to the Deputy Superintendent for Programs at Green Haven (56.1 Stmt. ¶ 18), received Plaintiff's letter dated May 2, 2017. (*Id.* ¶ 22 (citing Doc. 50, "Jebamani Decl." ¶ 5)). Jebamani reached out to the Deputy Superintendent of Programs at Green Haven on June 5, 2017 and on July 25, 2017 requesting that Plaintiff be added to the Protestant call-out list.  (*Id.* ¶¶ 23-24 (citing Jebamani Decl ¶ 5)).

As for Plaintiff's letter to Griffin, Griffin does not remember receiving Plaintiff's May 7, 2017 letter. (*Id.* ¶¶ 31, 33 (citing Doc. 49, "Griffin Decl." ¶ 4)). Griffin states that had he received such a letter, he would have sent it to the Assistant Deputy of Programs for further investigation. (*Id.* ¶ 33 (citing Griffin Decl. ¶ 4)). Plaintiff took no further action to address his inability to attend Protestant services until September 18, 2017 when he wrote a second letter to Griffin. (*Id.* ¶ 35 (citing Wiggins Dep. at 83:25-84:23)). After receiving Plaintiff's September 18, 2017 letter, Griffin forwarded the letter to Howard, the Assistant Deputy of Programs, (*id.* ¶ 37 (citing Griffin Decl. ¶ 5)) and responded to Plaintiff notifying him that his letter had been referred to Howard (*id.* ¶ 38 (citing Griffin Decl. ¶¶ 5-6)). Howard received Plaintiff's September 18, 2017 letter and updated the Protestant call-out list. (*Id.* ¶ 42 (citing Doc. 51, "Howard Decl." ¶ 3)). By letter dated September 20, 2017, Howard wrote to Plaintiff to inform him that Green Haven "updated the callout system" and that "Plaintiff's name should appear on this weekend's callout." (*Id.* ¶ 43 (citing Compl. at 25)). Beginning on September 23, 2017, Plaintiff's name was on the Protestant call-out list and Plaintiff was able to attend Protestant services without issue until he was

---

[3] Plaintiff's Complaint includes a number of exhibits annexed thereto. Because the Complaint and exhibits were filed via ECF in a single filing, the Court refers to the pagination generated by ECF.

transferred out of Green Haven in August 2018.[4] (*Id*. ¶ 45).

Plaintiff does not include any allegations related to Kopp and Plaintiff testified that he has not interacted with Kopp in any way regarding the gravamen of his allegations. (*Id*. ¶¶ 49-50 (citing Wiggins Dep. at 118:3-119:12)). Kopp, for her part, stated that she has no personal knowledge of, and was not involved in, the events giving rise to this dispute. (*Id*. ¶ 51 (citing Doc. 48, "Kopp Decl." ¶ 6)).

## II.   Exhaustion of Remedies

Plaintiff first filed a grievance through the Inmate Grievance Resolution Committee ("IGRC") related to his inability to attend Protestant religious services on September 18, 2017, more than five months after he was first removed from the Protestant call-out list. (*Id*. ¶ 52 (citing Wiggins Dep. at 104:18; Compl. at 32-33)). Plaintiff sought permission to attend services as well as compensation "for the months [he] was deprived of [the] right[] to attend the religious services of [his] faith." (*Id*. ¶ 53 (citing Compl. at 33)). On October 2, 2017, the IGRC denied Plaintiff's grievance as moot finding that Plaintiff "was and is being placed on Sunday worship service call outs" and finding further that "compensation is beyond the purview of the IGRC." (*Id*. ¶ 54 (citing Compl. at 35-37)). On October 11, 2017, Plaintiff appealed the IGRC's denial of compensation. (*Id.* ¶ 55 (citing Compl. at 35)). The superintendent affirmed the IGRC's decision, and shortly thereafter, Plaintiff appealed the denial of his grievance to the Central Office Review Committee ("CORC"). (*Id*. ¶¶ 55-56 (citing Compl. at 43, 45)). CORC affirmed the IGRC and Superintendent's denial of Plaintiff's grievance on February 13, 2019. (*Id*. ¶ 57 (citing Doc. 23)).

---

[4] While Plaintiff appears to also seek injunctive and declaratory relief (Compl. ¶¶ 1, 29), such requests are plainly moot because there is no dispute that Plaintiff was able to attend Protestant services beginning on September 23, 2017 prior to commencing this action; and Plaintiff no longer resides at Green Haven. Thus, the Court construes the Complaint as seeking money damages only.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-moving party "must come forward with

specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The opponent cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id*. (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I.    First Amendment Free Exercise Claim

Plaintiff alleges that Defendants infringed upon his First Amendment rights by prohibiting him from freely exercising his religion because he was unable to attend Protestant services for approximately five and a half months. "It is well-established that the First Amendment affords inmates constitutional protection to practice their religion." *Allah v. Annucci*, No. 16-CV-1841, 2020 WL 3073184, at *9 (S.D.N.Y. June 10, 2020) (citing *O'Lone v. Estate of Shabazz*, 482 U.S.

342, 348 (1987)). "To state a free exercise claim, an inmate 'must make a threshold showing that the disputed conduct [or policy] substantially burdened his sincerely held religious beliefs.'" *Id.* (quoting *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015)). Even if a plaintiff makes such a threshold showing, "a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'" *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone,* 482 U.S. at 349). Four factors are relevant to the reasonably related determination: "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Additionally, where "a plaintiff advances a Free Exercise claim pursuant to § 1983, a plaintiff must establish that the defendant (at least) had reason to know 'the facts rendering [his conduct] illegal.'" *Allah*, 2020 WL 3073184, at *10 (citing *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). Thus, if a Defendant "did not have reason to know that their conduct burdened Plaintiff's religious practice, they cannot be held liable for having done so." *Id.* (citing *Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019)).

Defendants offer a number of reasons why they are entitled to summary judgment on Plaintiff's First Amendment free exercise claim. Those arguments are analyzed seriatim.

A.  Plaintiff's Rights Were Not Substantially Burdened

Defendants argue that Plaintiff's sincerely held religious beliefs were not substantially burdened. (Defs. Br. at 15-17). The Court agrees.

"A substantial burden on religious exercise exists 'where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (quoting *Woodward v. Perez,* No. 12—CV-8671, 2014 WL 4276416, at *4 (S.D.N.Y. Aug. 29, 2014)). Thus, a prisoner must establish that a "practice that is 'central or important' to his practice of religion" was burdened by an act or policy in place at the prison facility. *Id*. (quoting *Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003)).

Here, the evidence in the record fails to establish that Plaintiff's inability to attend Protestant services for five-and-one-half months required him to modify his behavior or violate his beliefs. Plaintiff testified that during his term of incarceration he had occasionally missed religious services for various reasons. (Wiggins Dep. at 47:4-10). Additionally, while Plaintiff wrote two letters in May 2017—one to Jebamani and one to Griffin—concerning his inability to attend Protestant services, he did not file a formal complaint for more than five months after he was first notified that he was not on the Protestant services call-out list. (56.1 Stmt. ¶ 52). This inaction indicates that Plaintiff was not that concerned about the issue, and therefore, there was no substantial burden on Plaintiff's religion. Otherwise, Plaintiff would have grieved the issue in May 2017. Finally, Plaintiff did not testify that his inability to attend religious services forced him to violate his beliefs or modify his behavior. *Cf. Smith v. Graziano*, No. 08-CV-469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010), *adopted by* 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010) (dismissing free exercise claim because, *inter alia*, "the cancellation of the religious services did

not prevent Plaintiff from practicing his religion in other ways"). In short, on the evidence in the record, no reasonable jury could conclude that Plaintiff's inability to attend Protestant religious services created a substantial burden on Plaintiff concerning his sincerely held religious beliefs. *See Hamilton v. Countant*, No. 13-CV-669, 2016 WL 881126, at *5 (S.D.N.Y. Mar. 1, 2016) ("A substantial burden is more than a mere inconvenience but rather involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs." (quoting *Gill v. Defrank*, No. 98-CV-7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000))).

In any event, Green Haven's policy of not permitting a prisoner to attend religious services unless they are on the call-out list undoubtedly "is reasonably related to legitimate penological interests.'" *Redd*, 597 F.3d at 536. As Kopp, the Deputy Superintendent of Programs at Green Haven, explained, "[f]or inmates to be eligible to attend religious services, they must register as an adherent of their chosen religion with the Correctional Facility. Registered inmates have their religious preferences noted on their program cards and are required to request to be placed on the call-out for religious services. Correctional Officers rely on this call-out list for each name and cell number of inmates who are to be allowed to attend religious services at appropriate times." (Kopp Decl. ¶ 5). Such a policy ensures that prison officials can adequately keep track of inmate preferences and whereabouts while maintaining security and safety in the facility. These are legitimate penological objectives. *See, e.g.*, *McKinney v. City of New York*, No. 19-CV-05320, 2020 WL 5775664, at *6 (S.D.N.Y. July 23, 2020), *adopted by* 2020 WL 5775194 (S.D.N.Y. Sept. 28, 2020) ("Legitimate penological interests may include prison security and institutional safety goals."); *Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 189 (S.D.N.Y. 1995) ("Prison security and penological institutional safety goals are unquestionably compelling governmental interests.").

Additionally, no Defendant had reason to know that their conduct imposed a burden on Plaintiff's ability to practice his religion. In fact, the record reveals the opposite—that Defendants worked to add Plaintiff back to the Protestant call-out list so that he could attend Protestant services. (56.1 Stmt. ¶¶ 23-24 (after receiving Plaintiff's May 2, 2017 letter, Jebamani requested that the Protestant services call-out list be updated on June 5, 2017 and July 25, 2017); *id.* ¶ 33 (while Griffin does not recall receiving Plaintiff's May 7, 2017 letter, had he received the letter he would have sent it to the Assistant Deputy of Programs for investigation); *id.* ¶¶ 37-38 (after receiving Plaintiff's September 18, 2017 letter, Griffin forwarded it to the Assistant Deputy of Programs and wrote to Plaintiff confirming that he had received the letter); *id.* ¶¶ 41-44 (after receiving Plaintiff's September 18, 2017 letter from Griffin, Howard ensured the call-out list was updated and informed Plaintiff of same)).[5] Because Defendants had no reason to know that their conduct burdened Plaintiff's free exercise rights, "they cannot be held liable for having done so." *Allah*, 2020 WL 3073184, at *10 (citing *Porter*, 2019 WL 1428431, at *16).

For all of these reasons, the Court finds that no reasonable jury could find that any Defendant violated Plaintiff's free exercise rights. The Court therefore grants Defendants' motion for summary judgment as to the First Amendment free exercise claim.

### B. Qualified Immunity

Defendants argue also that they are entitled to qualified immunity. The Court agrees, and finds separately that Defendants' motion for summary judgment on their qualified immunity affirmative defense should be granted.

---

[5] The Complaint does not include any allegations against Kopp. Thus, Plaintiff's claims against Kopp would also be dismissed in the alternative for lack of personal involvement. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995))).

The doctrine of qualified immunity shields prison officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ford v. McGinnis*, 352 F.3d 582, 596 (2d Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Second Circuit has held that summary judgment on qualified immunity grounds is appropriate "if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Id*. at 597 (quoting *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996)). "[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The first question the Court must address is what precisely is the right at issue that was allegedly violated by Defendants? The Court finds that the right at issue is properly framed as whether Plaintiff had a clearly established right to attend religious services despite the fact that his name did not appear on a call-out list. The Court is mindful, in reaching this conclusion, that when determining whether a right is clearly established the Court must take care not to frame the right at issue too broadly. *See LaBounty v. Coughlin*, 137 F.3d 68, 73-74 (2d Cir. 1998) ("An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand . . . if the right is defined too broadly '[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract right.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987))). Plaintiff has pointed to no case law, and the Court is aware of none, establishing that Defendants violated a clearly established right. Rather, as the Court has already found, *see supra*, the requirement that prisoners be on a call-out list in order to attend religious services serves a legitimate penological interest. Furthermore, the record establishes clearly that after Defendants learned that Plaintiff was not able to attend Protestant services, they took appropriate action to attempt to remedy the situation. This simply is not a situation in which Defendants acted in a manner that was plainly incompetent or in knowing violation of the law. Once the issue regarding Plaintiff's inability to attend Protestant services was raised properly to Defendants, Defendants rectified the situation promptly. Accordingly, the Court finds that summary judgment is appropriate because Defendants are shielded by qualified immunity.[6]

## II.     Fourteenth Amendment Equal Protection Claim

The Complaint also alleges that Plaintiff's Fourteenth Amendment equal protection rights were violated. (Compl. ¶ 26). Utilizing the required liberality when interpreting a *pro se* Plaintiff's Complaint, the Court construes the Complaint as raising a Fourteenth Amendment selective enforcement claim. "To make out a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show: '(1) [that] he was treated differently than others similarly situated and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Peterec v. City of New York*, No. 14-CV-309, 2015 WL 1027367, at *5 (S.D.N.Y. Mar. 6, 2015) (quoting *Five Borough Bicycle Club v. City of*

---

[6] Because the Court has already found that there are two separate and independent bases upon which to grant summary judgment on Plaintiff's First Amendment claim, the Court need not and does not consider Defendants' other arguments.

*New York*, 684 F.Supp.2d 423, 438 (S.D.N.Y. 2010)); *see also Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *9 (S.D.N.Y. Feb. 5, 2021).

Defendants address Plaintiff's Fourteenth Amendment claim in a single footnote and argue that "Plaintiff has not alleged how his rights have been violated because of his membership in any protected class, including any showing that other religious practitioners at Green Haven were denied access to religious services or that as a member of such a class, he was treated differently from other comparable classes of individual religious practitioners." (Defs. Br. at 1, n.1). The Court agrees. Because there are no allegations in the Complaint or evidence in the record establishing that Plaintiff was treated differently than any other members in a protected class, Plaintiff's Fourteenth Amendment claim fails as a matter of law.[7]

### CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is GRANTED. The Court directs the Clerk to terminate the pending motion (Doc. 45) and terminate the action. The Court further directs the Clerk to mail a copy of this Memorandum Opinion and Order to Plaintiff at the address provided on the docket.

SO ORDERED:

Dated: White Plains, New York
        February 22, 2021

_____
Philip M. Halpern
United States District Judge

---

[7] Plaintiff's Complaint also includes conclusory allegations which could be interpreted to assert a *Monell* municipal liability claim. (*See* Compl. ¶ 27 (DOCCS "created a policy and procedure . . . and custom fostering the [allegedly wrongful] conduct and allowing such policy and custom to continue"); *id.* (DOCCS was "grossly negligent with deliberate indifference in the supervision of (JEBAMANI).")). However, Plaintiff does not name as a defendant any municipality, and, in any event, has not established the existence of a policy or custom that caused Plaintiff to be subject to a violation of his constitutional rights. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Accordingly, and to the extent Plaintiff intended to assert a municipal liability claim, such a claim fails as a matter of law.